IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ANTONIO LEDESMA, as personal Representative for the Estate of Maria Ledesma (deceased) and as legal guardian of Nancy Osorio (a minor); and RICARDO OSORIO, | | 8:13CV310 |
| Plaintiffs, | | |
| vs. | | |
| RICHARD BRAHMER d/b/a BRAHMER TRUCKING, | | |
| Defendant. | | MEMORANDUM AND ORDER |
| RICHARD BRAHMER d/b/a BRAHMER TRUCKING, | | |
| Counterclaimant | | |
| vs. | | |
| RICARDO OSORIO, | | |
| Counterclaimant Defendant. | | |

This matter is before the court on plaintiffs' motion for partial summary judgment, Filing No. 28, and on defendant/counterclaimant's motions for partial summary judgment, Filing No. 29, and in limine, Filing No. 37. Plaintiffs seek a declaration that plaintiff/counter-defendant Ricardo Osorio is the common-law spouse of Maria Ledesma (hereinafter, "the decedent"). Defendant/counterclaimant Richard Brahmer seeks summary judgment on certain items of the plaintiffs' damages. Brahmer also moves in limine to preclude the testimony of the plaintiffs' expert under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993). This is a wrongful death action involving a

fatal car accident that occurred in Fremont County, Iowa, on March 18, 2012.  This court has jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship).

Plaintiff Antonio Ledesma is the personal representative of the decedent's estate and the guardian of the decedent's minor child.  *See* Filing No. 1, Complaint, Ex. 1, Letters of Personal Representative, Order Appointing Guardian.  Plaintiff Ricardo Osorio is alleged to be the surviving spouse of the decedent.  *Id.*, Complaint at 1.  The plaintiffs are alleged to be residents and citizens of Tennessee.  *Id.*  Defendant Brahmer Trucking is a sole proprietorship owned and operated by Richard Brahmer, who is a resident and citizen of Nebraska.  *Id.* at 1-2.  This court earlier ruled that Iowa law applies to this action.  *See* Filing No. 26, Memorandum and Order.

The plaintiffs allege that the defendant was negligent and proximately caused the decedent's death.  Filing No. 1, Complaint at 4.  The defendant has filed a counterclaim against plaintiff Ricardo Osorio alleging that Osorio's negligent actions caused the decedent's injuries and death.  Filing No. 5.  Ricardo Osorio asserts he is entitled to damages for loss of consortium as the common-law spouse of the decedent and seeks a declaration to that effect.  In support of his motion he submits evidence that he and the decedent, Maria Ledesma, had lived together for nine years, held themselves out as husband and wife, and are parents of Nancy Osorio.  *See* Filing No. 28, attachments.  He concedes, however, that, although they held themselves out as married, they did not have a marriage certificate.  Filing No. 28, Attachment 1, Brief at 2.  The pleadings and evidence indicate that the couple resided in Tennessee; there are no allegations they resided elsewhere.  *See id.*, Attachment 3, Ledesma statement.  The defendant opposes the motion, arguing that the purported "marriage" is invalid and Ricardo Osorio cannot maintain a claim for loss of consortium under Iowa law.

In his motion for partial summary judgment, the defendant contends that he is entitled to judgment in his favor on certain elements of the plaintiffs' purported damages.  As noted, he contends plaintiff Ricardo Osorio cannot maintain a claim for loss of consortium.  He next argues that undisputed evidence shows that the decedent's body was dismembered on impact and she died immediately thereafter and consequently cannot recover for conscious pain and suffering and other pre-death elements of damages.[1]   Further, he argues that it is undisputed that there can be no recovery for the plaintiffs' decedent's loss of earning capacity because the plaintiffs have not provided any evidence to support the claim.[2]   He also asserts that attorney fees are not available under Iowa law.  His arguments are based, in part, on the plaintiffs' failure to comply with discovery requests.

In opposition to the motion, the plaintiffs have shown that they have since complied with several discovery requests and have produced the report of their expert, Alfred J. Marchisio, Jr., M.S., who will testify as to the value of the decedent's services.  See Filing No. 34, Ex. 1.  They do not address or challenge the defendant's contention that attorney fees are not recoverable unless authorized by statute or contract.

---

[1]  The defendant contends that recovery of pre-death loss of earnings, pre-death medical expenses, and pre-death loss of function of the mind and body are also precluded by the close proximity in time between the decedent's initial injury and her death.  Filing No. 29, Attachment 1, Brief at 8-9.

[2]  Although the defendant couches his argument in terms of the plaintiffs' failure to "calculate or provide credible testimony in regards to the present worth of the value of the estate," the argument relates, in essence, to proof of the plaintiffs' decedent's future earning capacity.   Filing No. 29, Attachment 1, Brief at 5-6.  The defendant acknowledges in his brief, however, that the plaintiffs have identified several of the decedent's relatives with information as to her previous employment as a childcare provider and also concedes the plaintiffs have produced the report of a vocational counselor. *See id.* at 4.  The defendant also acknowledges that the plaintiffs contend the decedent had been paid $400 per week by her father for her services.  *Id.* at 5.

The defendant's motion in limine is directed at the plaintiffs' proposed expert testimony.  The defendant argues that the evidence is inadmissible under *Daubert,* 509 U.S. at 593.

    I.  LAW

        A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 5(c).  To overcome a motion for summary judgment, the nonmoving party must present enough evidence to allow a reasonable jury to find in its favor.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In analyzing the evidence on a motion for summary judgment, this court must view the factual record and draw reasonable inferences in favor of the nonmoving party.  *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

        B.  Loss of Consortium/Marital Status

Under Iowa law, the general rule is that a spousal claim for loss of consortium requires a marital relationship.  *Doe v. Cherwitz*, 518 N.W.2d 362, 364 (Iowa 1994).  Iowa courts do not recognize a claim for loss of consortium by a cohabiting partner in a marriage-like relationship.  *Laws v. Griep*, 332 N.W.2d 339, 341 (Iowa 1983).

In Tennessee, marriage is controlled by statute, and common-law marriages are not recognized.  *Martin v. Coleman*, 19 S.W.3d 757, 760 (Tenn. 2000) (declining to hold that unmarried couples may create an implied partnership simply by their continued

cohabitation).[3]  Tennessee will recognize a valid common-law marriage entered into in a jurisdiction where common-law marriages are sanctioned.  *Andrews v. Signal Auto Parts, Inc.*, 492 S.W.2d 222, 223 (Tenn. 1972).

Iowa recognizes both ceremonial and common-law marriages.[4]  *In re Marriage of Derryberry*, 2014 WL 2884760, *2 (Iowa Ct. App. 2014); *Conklin by Johnson-Conklin v. MacMillan Oil Co.*, 557 N.W.2d 102, 104 (Iowa Ct. App. 1996).   The three elements necessary to find a common-law marriage are: (1) present intent and agreement to be married; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife.  *Conklin*, 557 N.W.2d at 105; *In re Marriage of Winegard*, 278 N.W.2d 505, 510 (Iowa 1979).   The burden of proof is on the party asserting the existence of a common-law marriage.  *Conklin*, 557 N.W.2d at 105.  When one party is deceased, the party asserting the marriage must prove the elements of a common-law marriage by a preponderance of clear, consistent, and convincing evidence.  *Id.*  A claim of common-law marriage is regarded with suspicion and is closely scrutinized because there is no public policy favoring common-law marriages in Iowa.  *Id.*

"But where the parties, while retaining their domicile in one state, pay a temporary visit to another state and there enter into a marriage which would not be recognized by the law of the state of their domicile if entered into therein, the latter state does not always look to the law of the place of the marriage to determine its validity. On

---

[3] Tennessee courts have recognized the doctrine of marriage by estoppel in exceptional cases when parties have believed in the validity of their marriage and have evidenced that belief by cohabitation.  *Martin,* 19 S.W.3d at 760.  It does not apply in cases where the parties knowingly live together in an unmarried state and are privileged to discontinue that relationship at will.  *Crawford v. Crawford,* 277 S.W.2d 389, 392 (Tenn. 1955).  There are no allegations that this action involves marriage by estoppel.

[4] Iowa is one of only nine states which still recognize common-law marriages, the others being Alabama, Colorado, Kansas, Rhode Island, South Carolina, Montana, Oklahoma, and Texas.  *See Derryberry*, 2014 WL 2884760 at *2 n.2.

the contrary, when the state of their domicile has a strong public policy against the type of marriage which the parties have gone to another state to contract, which policy is evidenced by a statute declaring such marriages to be void, the former state as the one most interested in the status and welfare of the parties will ordinarily look to its own law to determine the validity of the alleged marriage. *Metropolitan Life Insurance Company v. Chase,* 294 F.2d 500, 503-504 (3rd Cir. 1961)."

A district court sitting in diversity must apply the conflict of law rules for the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001). In deciding choice-of-law questions, Nebraska generally follows the Restatement (Second) of Conflict of Laws. *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001); *Harper v. Silva*, 399 N.W.2d 826, 828 (Neb. 1987); *Erickson v. U-Haul Intern.*, 767 N.W.2d 765, 772-73 (Neb. 2009) (stating "[i]n choice-of-law determinations, we often seek guidance from the Restatement (Second) of Conflict of Laws"); *see also Rainforth v. Rainforth*, 2008 WL 1744813, (Neb. App. 2008) (applying Restatement (Second) to spouse's pre-marital interest in land and applying law of the situs); *Quinn v. Quinn*, 13 689 N.W.2d 605, 614 (Neb. App. 2004) (same); *Palagi v. Palagi,* 627 N.W.2d 765, 772 (Neb. App. 2001) (applying Restatement in context of child's domicile in a divorce); *Quintela v. Quintela*, 544 N.W.2d 111, 115 (Neb. App. 1996) (applying restatement in context of paternity).

Courts look to § 283 of the Restatement (Second) of Conflict of Laws to decide "the law applicable to determining the validity of a marriage." *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 925 (6th Cir. 2006). When the resolution of some legal issue is dependent upon the underlying status of the individuals

involved, the distinct choice-of-law analysis for determining that status is applied, regardless of the nature of the underlying legal issue. *DaimlerChrysler Corp.*, 448 F.3d at 924-25; *see, e.g.*, Restatement (Second) of Conflict of Laws, § 283 cmt. a ("The rule of this Section [Validity of Marriage] is concerned with what law governs the validity of a marriage as such, namely what law determines, without regard to any incident involving the marriage, whether a man and a woman are husband and wife.")

"Section 283 calls for the determination of the validity of a marriage under the law of the state that 'has the most significant relationship to the spouses and the marriage.'" *DaimlerChrysler Corp.*, 448 F.3d at 925 (quoting Restatement (Second) of Conflict of Laws § 283(1)).  The Restatement also provides that "a marriage which satisfies the requirements of the state where the marriage was contracted will everywhere be recognized as valid unless it violates the strong public policy of another state which had the most significant relationship to the spouses and the marriage at the time of the marriage."  *Id.*, Restatement (Second) of Conflict of Laws § 283(2); *see also Bogardi v. Bogardi*, 542 N.W.2d 417, 420 (Neb. 1996) ("The general rule is that the validity of a marriage is determined by the law of the place where it was contracted; if valid there, it will be held valid everywhere, and conversely, if invalid by the *lex loci contractus*, it will be invalid wherever the question may arise."); Neb. Rev. Stat. § 42-117 (1968) (providing that a marriage, valid where contracted, is valid within the state); *Loughran v. Loughran*, 292 U.S. 216, 223 (1934) ("It is a general rule of conflict of laws that a marriage which is valid under the law of the place where it is contracted is recognized as valid everywhere"); *Lutwak v. United States*, 344 U.S. 604, 610 (1953) (referring to the "the general American rule of conflict of laws that a marriage valid where celebrated

is valid everywhere unless it is incestuous, polygamous, or otherwise declared void by statute.").

By "state where the marriage was contracted" is meant the state where the marriage was celebrated or where some other act was done that is claimed to have resulted in the creation of a marriage status, such as in the case of a common-law marriage. Restatement (Second) of Conflict of Laws § 283, cmts. e and g. The restatement also provides "[t]he state where the marriage was celebrated, or, in the case of a common law marriage, the state where the parties cohabited while holding themselves out to be man and wife, is the state which will usually be primarily concerned with the question of formalities." *Id.*, cmt. g.

C.   Damages

Under Iowa law, damages recoverable for wrongful death "attributable to the death as such" include the present worth or value of the estate, which the decedent would reasonably be expected to have accumulated between the time of death and the end of the decedent's natural life expectancy and the value of services and support recoverable by a designated beneficiary under Iowa Code § 613.15.[5] *Mead v. Adrian,* 670 N.W.2d 174, 179 (Iowa 2003). One seeking to recover these damages may also recover pre-death damages under Iowa's survival statute, but those damages are not attributable to a decedent's death because they may be recovered in instances where death has not occurred. *Id.* Pre-death injuries, if proximately caused by the defendant's

---

[5] That statute provides a cause of action for loss of consortium for injury or death of a parent or spouse. See Iowa Code. § 613.15.

8

negligence, are recoverable in full and may be recovered in addition to the amount awarded for wrongful death or lost chance of survival.[6] *Id.*

Loss of future earnings is a compensable item of damages in Iowa. *Sallis v. Lamansky*, 420 N.W.2d 795, 798 (Iowa 1988). In tort cases for personal injuries, "impairment of future earning capacity is a distinct item of damage." *Holmquist v. Volkswagen of Am., Inc.*, 261 N.W.2d 516, 525 (Iowa Ct. App. 1977). Such impairment is measured by the present value of the loss or impairment of general earning capacity, rather than loss of wages or earnings in a specific occupation. *Id.*; *Sallis,* 420 N.W.2d at 798 ("It is the loss of earning capacity that is compensable, not the loss of earnings."). In determining the amount of loss, consideration may be given to evidence of wages and earnings of plaintiff prior to the injury or death. *See Holmquist,* 261 N.W.2d at 525. However, "a person may not have worked or may have had no income prior to trial, but still suffer impairment of future earning capacity." *Carradus v. Lange*, 203 N.W.2d 565, 569 (Iowa 1973).

A "[p]laintiff seeking damages for lost future earnings has the burden of demonstrating, with reasonable certainty, that he or she has sustained loss of future earnings or earning capacity." *Holmquist,* 261 N.W.2d at 525. The question of whether a plaintiff, but for his or her injuries, would have pursued a certain line of work and earned a certain level of income goes to the credibility of plaintiff's evidence rather to its admissibility. *Sallis,* 420 N.W.2d at 798.

---

[6] However, "if both a traditional wrongful-death claim and a lost-chance-of-survival claim are submitted, the proportionally reduced recovery for lost chance would be included within and duplicated by an award of traditional wrongful-death damages." *Mead*, 670 N.W.2d at 179. Lost chance of survival damages are generally recoverable as alternative damages in medical malpractice cases that involve an intervening act of negligence. *See id.*

9

A decedent's estate is entitled to recover damages for the physical and mental pain and suffering incurred by the decedent from the time of injury to the time of death. *Estate of Pearson ex rel. Latta v. Interstate Power and Light Co.*, 700 N.W.2d 333, 347 (Iowa 2005). Physical pain and suffering includes bodily suffering, sensation, or discomfort. *Id.* Mental pain and suffering includes mental anguish, anxiety, embarrassment, loss of enjoyment of life, a feeling of uselessness, or other emotional distress. *Id.* Damages for physical and mental pain and suffering cannot be measured by any exact or mathematical standard and must be left to the sound judgment of the jury. *Id.* Damages for the pain and suffering of a decedent are not recoverable if death or unconsciousness is instantaneous. *Kuta v. Newberg*, 600 N.W.2d 280, 285 (Iowa 1999). However, if there is evidence showing the decedent suffered any pain, the item of damages is submissible even though the period of consciousness was not protracted. *Id.* (stating that pain and suffering damages are compensable even if the injured person was not conscious for an extended period of time).

Under Iowa law, attorney fees are not recoverable unless authorized by statute or contract. *Ward v. Loomis Bros., Inc.,* 532 N.W.2d 807 (Iowa Ct. App. 1995) (denying attorney fees in a wrongful death action).

### D.  Expert Testimony

Admissibility of expert testimony is governed by Fed. R. Civ. P. 702. *Daubert*, 509 U.S. at 588 (highlighting the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to "opinion" testimony). Trial judges are the gatekeepers to exclude unreliable scientific testimony. *Id.* at 597. This gatekeeper function applies to all expert testimony, not just testimony based in science. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

Proposed expert testimony must meet three prerequisites in order to be admitted under Rule 702:  first, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact; second, the proposed witness must be qualified to assist the finder of fact; and third, the proposed evidence must be reliable or trustworthy in an evidentiary sense.  *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).  Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003).  "[N]othing in Rule 702, *Daubert*, or its progeny requires 'that an expert resolve an ultimate issue of fact to a scientific absolute in order to be admissible.'"  *Id.* at 861(quoting *Bonner v. ISP Tech., Inc.,* 259 F.3d 924, 929 (8th Cir. 2001)).

Although *Daubert* established a non-exclusive checklist for trial courts to use in assessing the reliability of expert testimony, not all of the *Daubert* factors necessarily apply to non-scientific evidence.[7]  *United States v. Holmes*, 751 F.3d 846, 850 (8th Cir. 2014) (finding the reliability of non-scientific expert testimony must rest on reliable principles and methods, but the "relevant reliability concerns may focus upon personal knowledge or experience" rather than scientific foundations) (quoting *Kumho Tire*, 526 U.S. at 150).  "[C]ases are legion that, correctly, under *Daubert*, call for the liberal admission of expert testimony."  *Johnson v. Mead Johnson & Co.*, LLC, 754 F.3d 557, 564 (8th Cir. 2014); *see, e.g., United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011) (holding that doubts about the usefulness of expert testimony are resolved in

---

[7] Those factors are:  whether the theory or technique can be and has been tested; whether the theory or technique has been subjected to peer review and publication; the known or potential rate of error; whether the theory has been generally accepted; whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

favor of admissibility); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (holding that expert testimony should be admitted if it "advances the trier of fact's understanding to any degree" (quotation omitted)); *Lauzon v. Senco Prods., Inc.*, 270 F.3d at 686 (stating that Rule 702 "clearly is one of admissibility rather than exclusion" (internal quotation omitted)); *Wood v. Minnesota Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir.1997) (holding that exclusion of expert's opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury" (internal quotation omitted)).

Further, district courts are admonished not to weigh or assess the correctness of competing expert opinions. *Johnson*, 754 F.3d at 562. "As long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id.* (quoting *Daubert*, 509 U.S. at 590, 596). Generally, if the methodology employed by an expert is scientifically valid and could properly be applied to the facts of the case, it is reliable enough to assist the trier of fact. *Id.* at 564.

II.   DISCUSSION

Applying the choice-of-law principles of Nebraska, the court finds the validity of the decedent's marriage should be determined under the laws of Tennessee. Tennessee does not recognize common-law marriages and plaintiffs concede that Ricardo Osorio and the decedent did not comply with the formalities required under Tennessee law to establish their status as married. There is no dispute that the couple resided in Tennessee and Tennessee is the state with the most significant relationship

to the purported spouses and marriage.   Although Iowa recognizes common-law marriages, the couple's only connection to Iowa appears to be the location of the crash.

The choice of law with respect to the validity of a marriage is determined without reference to the law applicable to the underlying legal issue.   Iowa has no public policy favoring common-law marriage and Tennessee has a strong public policy against it, as evidenced by a statute declaring such marriages to be void.   Accordingly, plaintiff Ricardo Osorio has not sustained his burden of showing that he is entitled to be regarded as married so as to be eligible to recover damages for loss of consortium under Iowa law and his motion for partial summary judgment will be denied.

This finding disposes of the defendant's motion for partial summary judgment on the loss of consortium damages claim.   Accordingly, the court finds the defendant's motion for partial summary judgment should be granted with respect to the loss of consortium claim.   Because he cannot maintain an action for loss of consortium under Iowa law, Ricardo Osorio's claim will be dismissed.

The court finds, however, that the remainder of the defendant's motion should be denied.   The record shows that there is a genuine issue of material fact with respect to damages for pre-death pain and suffering and loss of future earning capacity.   There is a factual dispute with respect to whether and for how long Maria Ledesma was conscious before she was struck by the defendant's vehicle.   However, the court agrees that recovery of pre-death loss of earnings, pre-death medical expenses, and pre-death loss of function of the mind and body are precluded by the close proximity in time between the decedent's initial injury and her death.   Also, the record shows there is some evidence from which a trier of fact could determine and quantify the decedent's

13

future loss of earnings.  The defendant's objections to the plaintiffs' evidence in that respect go more to its weight than to its admissibility.

With respect to attorney fees, the court agrees with the defendant's position. Attorney fees are generally not available in a wrongful death action.  The plaintiffs have not responded to the defendant's argument and apparently concede the point. Accordingly, the court finds the defendant's motion for partial summary judgment should be granted with respect to any purported claim for attorney fees as an element of damages.

The court further finds that defendant's *Daubert* motion should be denied.  The expert, a Vocational Rehabilitation Counselor, appears to be qualified to testify with respect to the value of the decedent's services.  The record shows he has education and experience in the field.  He consulted several reports and studies on the value of household services in forming his opinion.  Based on his personal qualifications and experience, his testimony is likely reliable enough to assist the trier of fact.  The expert's methodology appears to be scientifically valid and can properly be applied to the facts of this case.[8]  The defendant's criticisms of the testimony are properly the subject of cross-examination.  The expert's opinion does not appear to be based on speculation or conjecture.  He concedes that his conclusion is based on information that is not precise, but is sufficient for reasonable projections as the value of her services as a household worker and potential chef or cook.  Whether the plaintiffs can establish that the

---

[8]  The defendant's contention that the expert is not qualified to opine on "present value" is misplaced.  Calculation of present value is commonly within the province of the court or the finder of fact. *Gleason v. Kueker,* 641 N.W.2d 553, 556-57 (Iowa Ct. App. 2001).  Iowa law requires an award for future damages in a personal injury action to be reduced to present value.  *See* Iowa Code § 624.18.  The jury can be instructed that "'present value' is 'a sum of money paid now in advance which together with interest at a reasonable rate of return, will compensate the plaintiff for future economic losses.'" *Id.* at 555 n.4 (quoting jury instruction).

decedent would have pursued a career as a chef remains an issue for trial.  There is evidence that she did perform household duties and cared for younger siblings as well as her own child and would have continued to do so.  Those housekeeping and childcare duties unquestionably have value.  The court finds the motion in limine should be denied.

THEREFORE, IT IS ORDERED:

1.     The plaintiffs' motion for partial summary judgment (Filing No. 28) is denied.

2.     Defendant/counterclaimant's motion for partial summary judgment (Filing No. 29) is granted with respect to Ricardo Osorio's loss of consortium claim and attorney fees claim and denied in all other respects, consistent with this opinion.

3.     Plaintiff/counterclaim defendant Ricardo Osorio's loss of consortium action is dismissed.

4.     Defendant/counterclaimant's motion in limine (Filing No. 37) is denied.

5.     Within (10) days of the date of this order, counsel for the plaintiffs shall contact the chambers of the United States Magistrate Judge Thomas Thalken to schedule a telephone planning conference for progression of this case.

Dated this 16th day of October, 2014.

BY THE COURT:


s/ Joseph F. Bataillon
Senior United States District Judge